[No. C060873. Third Dist. June 22, 2010.]

MELODY WHITTEMORE et al., Plaintiffs and Appellants, v.
OWENS HEALTHCARE-RETAIL PHARMACY, INC., et al., Defendants
and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

___

\*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication
with the exception of part II of the Discussion.

**COUNSEL**

Marc C. Barulich for Plaintiffs and Appellants.

Maire & Beasley, Wayne H. Maire, Aaron W. Moore; Kenny, Snowden & Norine, Jonz C. Norine; Lauria, Tokunaga, Gates & Linn, Raymond R. Gates and Brian A. Rosenthal for Defendants and Respondents.

**OPINION**

**BLEASE, J.**—This action involves the Drug Dealer Liability Act (the Act). (Health & Saf. Code, § 11700 et seq.)[1] It authorizes a user of an illegal controlled substance (and specified others) to recover damages resulting from its use from those who knowingly market the substance. It extends to substances for which a prescription is required. (§§ 11703, subd. (*l*), 11352.) The question tendered is whether a pharmacy is liable under the Act for the conduct of an employee who furnished stolen prescription drugs to the plaintiff.

For more than a year, plaintiff Melody Whittemore bought black-market prescription pain medications, including OxyContin, from defendant Steven Correa, an employee of defendants, and she became addicted. The pain medications were schedule II controlled substances that may be dispensed legally only by prescription. (§§ 11055, 11352.)

Thereafter, Melody[2] and her husband Kennith L. Whittemore sued Correa and his employers, defendants Owens Healthcare-Retail Pharmacy, Inc., and Omnicare, Inc. (the pharmacies), from whom they allege Correa obtained the

---

[1] A reference to an undesignated section is to the Health and Safety Code unless otherwise apparent from the context.

[2] When referring to plaintiffs individually, we shall use their respective first names; no disrespect is intended.

illegal controlled substances, on the ground that the pharmacies failed a legal duty to plaintiffs to discover and report that the substances had been stolen from them.

The trial court sustained the pharmacies' demurrer without leave to amend, ruling that the doctrine of unclean hands barred plaintiffs from maintaining causes of action "[b]ased on plaintiff's own illegal conduct in buying and taking medications for which she had no prescription and which she was aware were stolen . . . ."

Plaintiffs appeal from the ensuing judgment of dismissal. They assert that they should be permitted leave to amend their complaint to allege that the Act creates a statutory exception to the doctrine of unclean hands.

We agree that the doctrine of unclean hands does not preclude recovery in circumstances covered by the Act because the very purpose of the Act is to permit recovery of damages in specified circumstances by the user and others damaged by the use of the drugs. (§§ 11706, 11705.) However, the Act extends liability only to a person "who knowingly participates in the marketing of illegal controlled substances within this state . . . ." (§ 11704, subd. (a).)

We shall affirm the judgment for the reason that the pharmacies did not knowingly market the controlled substances to Melody.

## FACTS

In reviewing a judgment of dismissal entered after the sustaining of a demurrer, we accept as true the factual allegations of the complaint. (*Aragon-Haas v. Family Security Ins. Services, Inc.* (1991) 231 Cal.App.3d 232, 238 [282 Cal.Rptr. 233].) The operative (first amended) complaint alleges the following.

Melody was treated by a doctor in or about September 2005 for a severe infection. After she left her doctor's care, Melody "did not know how she was going to be able to obtain the necessary pain medication." She was

approached by a woman who "informed her that the pain medication could be obtained for her for $1.00 per pill"; Steven Correa soon began providing Melody with pain medication. Melody purchased various pain medications from Correa, including Norco, OxyContin and hydrocodone, and she asserts that all of these medications "came from Defendant/OWENS and/or Defendant/OMNICARE," by whom Correa was employed.[3]

Between September 2005 and March 2007, Melody paid Correa over $330,000 in cash for pain pills. She became physically and emotionally addicted to them. Her husband discovered her distress, and she was hospitalized. Sometime thereafter, Melody cooperated with drug enforcement officers to expose and arrest Correa.

After plaintiffs learned that the pharmacy defendants are required by law to monitor medications in their possession and to report missing medication to the Drug Enforcement Agency, they brought this action against Correa and the pharmacies seeking damages based on various theories including negligence. They alleged the pharmacy defendants failed to properly monitor and account for controlled medications in their possession, and failed to report to the federal Drug Enforcement Agency that certain medications had been lost, missing or stolen, and, in so doing, "were instrumental in providing [Melody] with assorted pain medication," and acted in "reckless disregard for Plaintiff's welfare."

Plaintiffs also alleged Kennith Whittemore suffered severe emotional distress by virtue of his having seen the effects the drugs had on his wife, and sought damages on legal theories of unfair business practices, loss of consortium, intentional infliction of emotional distress, and battery because Melody's addiction rendered her unable to consent to ingesting the pain medication. Among the damages plaintiffs sought to recover were the sums Melody spent on the pain medications, medical expenses related to her addiction, and punitive damages.

The pharmacy defendants demurred,[4] arguing (as relevant to this appeal) that Melody's admitted illegal purchase and use of federally controlled medications without a prescription may not, as a matter of law, give rise to

---

[3] Although the complaint implies (but does not specifically allege) that Correa stole the medications from defendants in order to sell them to Melody, plaintiffs' opposition to defendants' demurrer confirms it is plaintiffs' theory that "Correa, was allowed to steal controlled substances from [defendants] and sell them" and that was the understanding of the trial court in ruling on the demurrer.

[4] Initially, only Owens Healthcare-Retail Pharmacy demurred; Omnicare, Inc., answered. Later, the court (with the parties' consent) deemed the demurrer to have been filed by both pharmacy defendants.

claims against them.[5] Defendants also argued they have no liability for Correa's conduct based on a theory of respondeat superior, because Correa was not acting within the scope and course of his employment when he stole pain medications from them and sold them to Melody.

Plaintiffs responded that the injury was caused by defendants' failure to supervise Correa and to monitor the inventory of controlled medications, and that defendants may properly be held responsible for their employees' crimes and tortious conduct if it was (as here) foreseeable.

The court sustained the demurrer without leave to amend on the ground urged by defendants. "Based on plaintiff's own illegal conduct in buying and taking medications for which she had no prescription and which she was aware were stolen, her causes of action are barred." The court also ruled that Kennith's claims for negligent infliction of emotional distress and loss of consortium, although arguably his alone, do not survive because they depend on Melody's claims.

## DISCUSSION

### I

#### *Standards of Review*

Our task in reviewing the sustaining of a demurrer is to determine whether the complaint states facts sufficient to constitute a cause of action. We assume the truth of the properly pleaded material facts and the reasonable inferences that may be drawn therefrom, and give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

When the demurrer to the complaint has been sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion in sustaining the demurrer and we reverse the decision. On appeal "the burden of proving a reasonable possibility exists that a complaint's defects can be cured by amendment rests 'squarely on the plaintiff.' " (*Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1091 [32 Cal.Rptr.3d 483, 116 P.3d 1162], quoting *Blank v. Kirwan, supra,* 39 Cal.3d at pp. 318–319.)

---

[5] No response by Correa to the complaint appears in the record.

The trial court sustained the demurrer on the ground the doctrine of unclean hands bars plaintiff, and derivatively her husband, from recovering from the pharmacies. On appeal plaintiffs seek to amend their complaint to bring the case within the provisions of the Act on the view it authorizes recovery on grounds otherwise barred by the doctrine of unclean hands. With that much we agree.

However, Melody makes no claim that the complaint can be amended to show that the pharmacies "knowingly marketed" the prescription drugs to her. For that reason we shall affirm the judgment of dismissal.

## II

### *The Court Did Not Err in Applying the Doctrine of Unclean Hands\**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III

### *The Drug Dealer Liability Act*

Plaintiffs assert for the first time on appeal that, even if the doctrine of unclean hands would otherwise bar their complaint, they should be permitted to amend it to assert that an exception to that doctrine, applicable to the facts presented here, is provided by the Act. We disagree.

 While the Act is inconsistent with the doctrine of unclean hands insofar as a case comes within its provisions, the Act does not apply unless the defendants "knowingly participate[d] in the marketing of illegal controlled substances within this state" and that rules out plaintiffs' theories of recovery against the pharmacies. (§ 11704, subd. (a).)

The purpose of the Act is to enable persons injured as a consequence of the use of an "illegal controlled substance" to recover damages from persons who participated in their marketing and to shift the cost of damages "to those who illegally profit from that market." (§§ 11701, 11702.)

 The Act applies both to users and to specified others. It applies to " '[s]pecified illegal controlled substance[s],' " which include any substance which violates section 11352. (§ 11703, subd. (*l*).) The drugs at issue in this case, Norco, OxyContin, and hydrocodone, are schedule II drugs under section

---

*See footnote, *ante*, page 1194.

11055, subdivision (b)(1)(J) and (N), the marketing of which is made illegal by section 11352 "unless upon the written prescription of a [licensed] physician . . . ."

## A. *The Individual User*

"A person may recover damages under this division [(the Act)] for injury resulting from an individual's use of an illegal controlled substance." (§ 11704, subd. (a).)[8] "A person entitled to bring an action . . . may seek damages only from a person who manufactured, transported, imported into this state, sold, possessed with intent to sell, furnished, administered, or gave away the specified illegal controlled substance actually used by the individual user of an illegal controlled substance." (§ 11706, subd. (b).)

■ Although section 11706 does not contain a scienter requirement for liability, that is supplied by section 11704, subdivision (a). "A person who *knowingly* participates in the marketing of illegal controlled substances within this state is liable for civil damages as provided in this division." (*Ibid.*, italics added.)[9]

■ This would include Steven Correa, who sold the drugs to Melody without a prescription. It would not include the defendant pharmacies since they did not "knowingly" participate in the marketing of the drugs to Melody.

## B. *The Husband*

■ Melody's husband also sued for his loss of consortium and the costs of her treatment. The Act, section 11705, includes the spouse as one of the persons, other than the user, who may recover damages, but only from the person who furnished the illegal controlled substance to the individual user (*id.*, subd. (b)(1)) or from the person who "knowingly participated in the marketing" of the substance to the user (*id.*, subd. (b)(2)). The latter phrase applies only to a person who is convicted of a drug marketing offense. (§ 11705, subd. (c).)

The pharmacies neither furnished the illegal substances to Melody nor were they convicted of a criminal offense.

---

[8] Division 10.2 includes section 11706.

[9] For this reason the Act does not impose liability for negligent conduct.

## DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

Scotland, P. J., and Sims, J., concurred.