[No. A134543. First Dist., Div. One. Jan. 31, 2013.]

SAN MATEO UNION HIGH SCHOOL DISTRICT et al., Plaintiffs and Appellants, v.
COUNTY OF SAN MATEO et al., Defendants and Respondents.

## COUNSEL

Goodman Neuman Hamilton, Farley J. Neuman, Tom Prountzos and Patricia Bonheyo for Plaintiffs and Appellants.

Keker & Van Nest, Stuart L. Gasner, Michael D. Celio and Ajay S. Krishnan for Defendants and Respondents.

424

## OPINION

**DONDERO, J.**—This appeal has been taken from the trial court's ruling that sustained defendants' demurrer to all the causes of action of plaintiffs' complaint and dismissed the action. We find that plaintiffs cannot properly state a cause of action for breach of contract, and defendants have public entity immunity from the remaining noncontractual causes of action. We therefore affirm the judgment.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiffs in the present action are school districts that invested money in the San Mateo Pooled Investment Fund (the Pool), managed and operated by defendants San Mateo County (the County) and former County Treasurer Lee Buffington. A portion of the Pool was invested by defendants in nine notes issued by Lehman Brothers Holdings, Inc. (Lehman). When Lehman declared bankruptcy in September of 2008, the Pool lost approximately $155 million, plaintiffs' share of which was approximately $20 million.

After plaintiffs and defendants engaged in unsuccessful settlement discussions, and defendants rejected plaintiffs' formal written notice of tort claim (Gov. Code, §§ 905, 945.4),[1] plaintiffs filed a complaint against defendants on January 4, 2011. Defendants' demurrer to the complaint was sustained with leave to amend.

Plaintiffs subsequently filed the pleading at issue here, the first amended complaint (the complaint), which included causes of action for breach of contract, statutory violations of the prudent investor standards (§§ 27000.3, 53600.3), violations of the statutory maximum securities maturity limits (§ 53601), and violations of the County's investment policies. Defendants again demurred to the complaint on grounds that plaintiffs failed to timely file a tort claim, immunity from liability for alleged statutory violations, and failure to properly allege a cause of action for breach of contract. Following a hearing the trial court sustained the demurrer without leave to amend. The court found that plaintiffs "failed to plead a cause of action for breach of contract," and defendants were "immune from liability pursuant to Government Code sections 815 and 820.2."[2] This appeal followed entry of judgment in favor of defendants.

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

[2] The court also found that defendants "waived" compliance with the tort claims requirements.

### DISCUSSION

Plaintiffs argue that the trial court erred by sustaining defendants' demurrer without leave to amend. They claim that the County and Buffington are not immune from liability for violations of the mandatory prudent investor standard or the statutory "maturity limits" requirements. Plaintiffs also assert that they have properly pled a cause of action for breach of contract.

We review the trial court's ruling that sustained the demurrer to each cause of action of the pleading in accordance with established standards. "A demurrer tests the sufficiency of the complaint as a matter of law; as such, it raises only a question of law." (*Osornio v. Weingarten* (2004) 124 Cal.App.4th 304, 316 [21 Cal.Rptr.3d 246].) " 'The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed "if any one of the several grounds of demurrer is well taken. [Citations.]" [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.]' [Citation.]" (*Bagatti v. Department of Rehabilitation* (2002) 97 Cal.App.4th 344, 352 [118 Cal.Rptr.2d 443]; see *Lee v. Blue Shield of California* (2007) 154 Cal.App.4th 1369, 1377–1378 [65 Cal.Rptr.3d 612].)

The material allegations in the action filed by plaintiff "must be accepted as true. [Citations.] In addition, the Supreme Court has held: ' "[T]he allegations of the complaint must be liberally construed with a view to attaining substantial justice among the parties." [Citations.]' [Citations.]" (*C.J.L. Construction, Inc. v. Universal Plumbing* (1993) 18 Cal.App.4th 376, 382–383 [22 Cal.Rptr.2d 360].) "In addition to the complaint's allegations, we consider matters that must or may be judicially noticed. [Citations.] We also consider the complaint's exhibits." (*Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400 [102 Cal.Rptr.3d 72]; see *Banis Restaurant Design, Inc. v. Serrano* (2005) 134 Cal.App.4th 1035, 1044–1045 [36 Cal.Rptr.3d 532].)

Our task as a "reviewing court, therefore, 'is to determine whether the pleaded facts state a cause of action on any available legal theory.' [Citation.]" (*Richelle L. v. Roman Catholic Archbishop* (2003) 106 Cal.App.4th 257, 266 [130 Cal.Rptr.2d 601].) "If the complaint states a cause of action under any theory, regardless of the title under which the factual basis for relief is stated, that aspect of the complaint is good against a demurrer." (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 38 [77 Cal.Rptr.2d 709, 960 P.2d 513].) However, "[w]e may affirm a trial court

judgment on any basis presented by the record whether or not relied upon by the trial court." (*State of California ex rel. Metz v. CCC Information Services, Inc.* (2007) 149 Cal.App.4th 402, 412 [57 Cal.Rptr.3d 156].)

"On appeal from a judgment of dismissal after a demurrer has been sustained without leave to amend, the plaintiff has the burden of proving error. [Citation.] 'Because the trial court's determination is made as a matter of law, we review the ruling de novo.' [Citation.]" (*E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308, 1315 [64 Cal.Rptr.3d 9].)

I. *The Public Entity Tort Liability of the County for Statutory Violation of the Prudent Investor Standard.*

█ Plaintiffs' second cause of action asserts that defendants violated sections 27000.3 and 53600.3, which articulate the "prudent investor standard" governing investments by a county treasurer, in this case defendant Buffington, who was delegated investment authority by the county board of supervisors.[3] Both statutes provide that the county treasurer shall serve as a fiduciary when investing or managing funds deposited with the county treasury, and "*shall* act" according to the "prudent investor standard," with the "care, skill, prudence, and diligence under the circumstances then prevailing," to safeguard the principal and maintain the liquidity needs of the county and the depositors.[4] (§§ 27000.3, 53600.3, italics added.) The essence of the

___

[3] The Legislature has enacted a detailed statutory scheme (§§ 53600–53997) for the deposit and investment of local agency surplus funds. A county is a local agency (§ 53600) and its governing body, the county board of supervisors, is empowered to make investment decisions on behalf of the county (§§ 53600.3, 53607). However, a board of supervisors may delegate its investment authority to the county treasurer under the terms of section 53607, which states: "The authority of the legislative body to invest or to reinvest funds of a local agency, or to sell or exchange securities so purchased, may be delegated for a one-year period by the legislative body to the treasurer of the local agency, who shall thereafter assume full responsibility for those transactions until the delegation of authority is revoked or expires, and shall make a monthly report of those transactions to the legislative body. Subject to review, the legislative body may renew the delegation of authority pursuant to this section each year." Upon receiving authority from the board of supervisors to invest county funds, the treasurer assumes full responsibility for that function. (§ 27000.1.)

[4] Section 27000.3 reads in full: "(a) With regard to county funds deposited in the county treasury, the board of supervisors is the agent of the county who serves as a fiduciary and is subject to the prudent investor standard, unless a delegation has occurred pursuant to Section 53607 in which case the county treasurer shall be the agent of the county with respect to these funds, serve as a fiduciary, and be subject to the prudent investor standard and the board of supervisors shall not be the agent, serve as a fiduciary, or be subject to the prudent investor standard. [¶] (b) With regard to funds deposited in the county treasury that are deposited by local agencies other than the county and at the discretion of those local agencies, the county treasurer serves as a fiduciary subject to the prudent investor standard. [¶] (c) When investing, reinvesting, purchasing, acquiring, exchanging, selling, or managing public funds, the county treasurer or the board of supervisors, as applicable, shall act with care, skill, prudence, and

alleged statutory violation of the prudent investor standard is that defendants "invested an excessive portion of the Pool's funds in Lehman," failed to diversify the investment portfolio, and failed to recognize the foreseeable, impending collapse of Lehman.

 The liability of defendants for alleged acts that violated the prudent investor standard requires analysis of public entity immunity. Public entities in California are not liable for tortious injury unless liability is imposed by statute. (§ 815.) "[S]overeign immunity is the rule in California; governmental liability is limited to exceptions specifically set forth by statute." (*Cochran v. Herzog Engraving Co.* (1984) 155 Cal.App.3d 405, 409 [205 Cal.Rptr. 1]; see *Guzman v. County of Monterey* (2009) 178 Cal.App.4th 983, 990–991 [100 Cal.Rptr.3d 793].) Section 815 provides "that public entity tort liability is exclusively statutory: 'Except as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.' " (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 868 [138 Cal.Rptr.3d 1, 270 P.3d 699].) " 'This section abolishes all common law or judicially declared forms of liability for public entities, except for such liability as may be required by the state or federal constitution, e.g., inverse condemnation. In the absence of a constitutional requirement, public entities may be held liable only if a statute (not including a charter provision, ordinance or regulation) is found declaring them to be liable. . . . [¶] . . . [¶] . . . [T]here is no liability in the absence of a statute declaring such liability.' (Legis. Com. com., 32 West's Ann. Gov. Code (1995

---

diligence under the circumstances then prevailing, specifically including, but not limited to, the general economic conditions and the anticipated needs of the county and other depositors, that a prudent person acting in a like capacity and familiarity with those matters would use in the conduct of funds of a like character and with like aims, to safeguard the principal and maintain the liquidity needs of the county and the other depositors. Within the limitations of this section and considering individual investments as part of an overall investment strategy, investments may be acquired as authorized by law. Nothing in this chapter is intended to grant investment authority to any person or governing body except as provided in Sections 53601, 53607, and 53635."

Section 53600.3 states the standard for governing bodies or persons authorized to make investment decisions for local agencies as follows: "Except as provided in subdivision (a) of Section 27000.3, all governing bodies of local agencies or persons authorized to make investment decisions on behalf of those local agencies investing public funds pursuant to this chapter are trustees and therefore fiduciaries subject to the prudent investor standard. When investing, reinvesting, purchasing, acquiring, exchanging, selling, or managing public funds, a trustee shall act with care, skill, prudence, and diligence under the circumstances then prevailing, including, but not limited to, the general economic conditions and the anticipated needs of the agency, that a prudent person acting in a like capacity and familiarity with those matters would use in the conduct of funds of a like character and with like aims, to safeguard the principal and maintain the liquidity needs of the agency. Within the limitations of this section and considering individual investments as part of an overall strategy, investments may be acquired as authorized by law."

ed.) foll. § 815, p. 167.)" (*Corona v. State of California* (2009) 178 Cal.App.4th 723, 728 [100 Cal.Rptr.3d 591].)

This means that the " 'liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care' " to the plaintiff. (*All Angels Preschool/Daycare v. County of Merced* (2011) 197 Cal.App.4th 394, 400 [128 Cal.Rptr.3d 349], quoting *Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, 1183 [7 Cal.Rptr.3d 552, 80 P.3d 656] (*Eastburn*).) "The law's clear purpose was ' " 'not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances.' " ' [Citation.]" (*Ellerbee v. County of Los Angeles* (2010) 187 Cal.App.4th 1206, 1214 [114 Cal.Rptr.3d 756].)

■ To impose liability on defendants for the claimed violation of the prudent investor standard, plaintiffs rely on section 815.6, which explicitly provides a statutory basis for direct liability of a public entity. (*Eastburn, supra*, 31 Cal.4th 1175, 1180.) Section 815.6 declares: "Where a public entity is under a *mandatory duty* imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." (Italics added.) Plaintiffs argue that use of the term "shall" in sections 27000.3 and 53600.3 imposes "a 'mandatory duty' " to comply with the prudent investor standard "for purposes of section 815.6 liability." Therefore, plaintiffs' argument proceeds, the second cause of action has properly asserted liability for violation of a mandatory duty under section 815.6, and falls outside the scope of public entity immunity.

Section 815.6 has three discrete requirements which "must be met before governmental entity liability may be imposed under Government Code section 815.6: (1) an enactment must impose a mandatory duty; (2) the enactment must be meant to protect against the kind of risk of injury suffered by the party asserting section 815.6 as a basis for liability; and (3) breach of the mandatory duty must be a proximate cause of the injury suffered." (*Ellerbee v. County of Los Angeles, supra*, 187 Cal.App.4th 1206, 1215.) The first requirement, which is ultimately dispositive here, is that "the enactment at issue be obligatory, rather than merely discretionary or permissive, in its directions to the public entity; it must require, rather than merely authorize or permit, that a particular action be taken or not taken." (*Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 498 [93 Cal.Rptr.2d 327, 993 P.2d 983], italics omitted; see *California Highway Patrol v. Superior Court* (2008) 162 Cal.App.4th 1144, 1155 [76 Cal.Rptr.3d 578].) " 'Whether an enactment creates a mandatory duty is a question of law: "Whether a particular statute is

intended to impose a mandatory duty, rather than a mere obligation to perform a discretionary function, is a question of statutory interpretation for the courts." [Citation.]' [Citation.]" (*Ellerbee, supra*, at p. 1215; see *Strong v. State of California* (2011) 201 Cal.App.4th 1439, 1450 [137 Cal.Rptr.3d 249].)

■ While the dividing line between a discretionary and mandatory duty is not always definitive, the California Supreme Court has articulated "rigid requirements for imposition of governmental liability under Government Code section 815.6 . . . ." (*Ellerbee v. County of Los Angeles, supra*, 187 Cal.App.4th 1206, 1215.) " 'An enactment creates a mandatory duty if it requires a public agency to take a particular action. [Citation.] An enactment does not create a mandatory duty if it merely recites legislative goals and policies that must be implemented through a public agency's exercise of discretion.' [Citation.]" (*Lockhart v. County of Los Angeles* (2007) 155 Cal.App.4th 289, 308 [66 Cal.Rptr.3d 62].) "Courts have construed this first prong rather strictly, finding a mandatory duty only if the enactment 'affirmatively imposes the duty and provides implementing guidelines.' [Citations.]" (*Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 898 [95 Cal.Rptr.3d 183, 209 P.3d 89]; see *Department of Corporations v. Superior Court* (2007) 153 Cal.App.4th 916, 932 [63 Cal.Rptr.3d 624].)

The court has also recognized that under section 815.6, inclusion of the term "shall" in an enactment "does not necessarily create a mandatory duty; there may be 'other factors [that] indicate that apparent obligatory language was not intended to foreclose a governmental entity's or officer's exercise of discretion.' [Citations.]" (*Guzman v. County of Monterey, supra*, 46 Cal.4th 887, 898, 899.) "In determining whether a mandatory duty actionable under section 815.6 had been imposed, the Legislature's use of mandatory language (while necessary) is not the dispositive criteria. Instead, the courts have focused on the particular action required by the statute, and have found the enactment created a mandatory duty under section 815.6 only where the statutorily commanded act did not lend itself to a normative or qualitative debate over whether it was adequately fulfilled." (*de Villers v. County of San Diego* (2007) 156 Cal.App.4th 238, 260 [67 Cal.Rptr.3d 253], fn. omitted.) "It is not enough," the California Supreme Court has declared, "that the public entity or officer have been under an obligation to perform a function if the function itself involves the exercise of discretion." (*Haggis v. City of Los Angeles, supra*, 22 Cal.4th 490, 498.)

■ The basic compulsory obligation imposed on the county treasurer by sections 27000.3 and 53600.3 to act as a prudent investor, while stated in mandatory language, is quite general. The statutes do not command specific acts designed to achieve compliance with the prudent investor standard.

*(de Villers v. County of San Diego, supra*, 156 Cal.App.4th 238, 257.) The manner in which the required standard of the prudent investor is to be attained entails the exercise of extensive discretion that is not in the least specified by the statutes or any accompanying implementing measures.[5] (See *Lockhart v. County of Los Angeles, supra*, 155 Cal.App.4th 289, 308; *Wood v. County of San Joaquin* (2003) 111 Cal.App.4th 960, 975 [4 Cal.Rptr.3d 340]; *MacDonald v. State of California* (1991) 230 Cal.App.3d 319, 331 [281 Cal.Rptr. 317].) Left to the expertise and judgment of the county treasurer are a myriad of investment evaluations, appraisals and choices that are the very essence of discretion. (See *Guzman v. County of Monterey, supra*, 46 Cal.4th 887, 900; *Braman v. State of California* (1994) 28 Cal.App.4th 344, 351 [33 Cal.Rptr.2d 608].) "[I]n cases not involving a public entity's ' "quasi-legislative policy-making" ' [citation], the inquiry should focus on whether the entity must 'render a considered decision' [citation], one requiring its expertise and judgment [citations]." *(Guzman v. County of Monterey, supra*, at p. 899.) The issue of defendants' compliance with the prudent investor standard would also necessitate a complex qualitative analysis, rather than merely a straightforward determination that a specific ministerial directive has been ignored or violated. (See *Ortega v. Sacramento County Dept. of Health & Human Services* (2008) 161 Cal.App.4th 713, 728 [74 Cal.Rptr.3d 390] *(Ortega); Ronald S. v. County of San Diego* (1993) 16 Cal.App.4th 887, 897 [20 Cal.Rptr.2d 418] *(Ronald S.).)*

■ In *de Villers v. County of San Diego, supra*, 156 Cal.App.4th 238, 247 *(de Villers)*, the county was sued for breach of a mandatory duty specified in the Code of Federal Regulations which stated a government agency, in that case the county's office of the medical examiner (OME), " 'shall provide effective controls and procedures to guard against theft and diversion of controlled substances.' (21 C.F.R. § 1301.71(a).)" *(Id.* at p. 257, fn. omitted.) The court noted that "the Legislature's use of mandatory language (while necessary) is not the dispositive criteria. Instead, the courts have focused on the particular action required by the statute, and have found the enactment created a mandatory duty under section 815.6 only where the statutorily commanded act did not lend itself to a normative or qualitative debate over whether it was adequately fulfilled." *(Id.* at p. 260, fn. omitted.) "[A]ctionable mandatory duties" were characterized as those in which "the required action was clear and discrete and required no evaluation of *whether* it had in fact occurred."[6] *(deVillers, supra*, at p. 260.) "In contrast," the court declared,

---

[5] We observe that Government Code sections 27000.3 and 53600.3 do not even articulate circumstances appropriate to consider in prudently investing and managing assets, such as are found in the statutes that state the prudent investor rule imposed on trustees who invest and manage trust assets. (See Prob. Code, §§ 16040, 16047.)

[6] Actionable mandatory duties have been found, the court pointed out, "where a county failed to release an arrestee after dismissal of charges as required by Penal Code section 1384

"when the statutorily prescribed act involves debatable issues over whether the steps taken by the entity *adequately* fulfilled its obligation, we believe the act necessarily embodies discretionary determinations by the agency regarding how best to fulfill the mandate, and this discretion removes the duty from the type of activity that supports a claim under section 815.6." (*Id.*, at pp. 260–261.)

The court in *de Villers* concluded: "Here, the mandated act—to 'guard against' theft with 'effective controls and procedures'—does not involve a discrete act over which there can be no debate, but instead involves actions that admit to a qualitative debate over whether OME's actions were sufficient to fulfill its obligation. Indeed, the Code of Federal Regulations itself contemplates that '[s]ubstantial compliance with the standards . . . may be deemed sufficient by the Administrator' to satisfy the mandate (21 C.F.R. § 1301.71(b) (2007)), which confirms that the qualitative judgments on the adequacy of the steps taken to fulfill the mandate have been vested in administrative agencies. We do not believe that 21 Code of Federal Regulations part 1301.71 imposes a duty that is mandatory for purposes of establishing damages liability under section 815.6, because the predicate enactment confers on government officials the discretion to evaluate and decide how best to implement the required security." (*de Villers, supra,* 156 Cal.App.4th 238, 261.)

Similarly, sections 27000.3 and 53600.3 grant to the board of supervisors or county treasurer comprehensive discretion to evaluate and decide how best to comply with the command to act as a prudent investor. (See *Creason v. Department of Health Services* (1998) 18 Cal.4th 623, 634–635 [76 Cal.Rptr.2d 489, 957 P.2d 1323] (*Creason*); *County of Los Angeles v. Superior Court* (2002) 102 Cal.App.4th 627, 641–643 [125 Cal.Rptr.2d 637]; *Ronald S., supra,* 16 Cal.App.4th 887, 897; *MacDonald v. State of California, supra,* 230 Cal.App.3d 319, 331.)[7] This is not a case in which the plaintiff seeks to

---

(*Sullivan v. County of Los Angeles* (1974) 12 Cal.3d 710 [117 Cal.Rptr. 241, 527 P.2d 865]), or where the agency failed to register a dismissal of charges as required by Penal Code section 1384 (*Bradford v. State of California* (1973) 36 Cal.App.3d 16 [111 Cal.Rptr. 852]), or where the entity failed to release the arrestee under the duty to release on bail prescribed by Penal Code section 1295 (*Shakespeare v. City of Pasadena* (1964) 230 Cal.App.2d 375 [40 Cal.Rptr. 863]). In each of these cases, the required action was clear and discrete and required no evaluation of whether it had in fact occurred." (*de Villers, supra,* 156 Cal.App.4th 238, 260, italics & fn. omitted.)

[7] At issue in *Creason, supra,* 18 Cal.4th 623, 629, was legislation that obliged the State Department of Health Services to formulate testing standards for hypothyroidism that would be " ' "accurate, provide maximum information, and . . . produce results that are subject to minimum misinterpretation." ' " It was alleged the standards developed by the agency failed to satisfy those obligations, and the injuries suffered as a result of that failure were actionable under section 815.6. (*Creason, supra,* at pp. 627–629.) The Supreme Court concluded that, although the enactment contained mandatory language describing the goals to be pursued, it

impose liability for clear breach of a mandatory ministerial or regulatory directive that leaves no choice other than to execute the enacted requirement. (Cf. *Haggis v. City of Los Angeles, supra*, 22 Cal.4th 490, 502; *Alejo v. City of Alhambra* (1999) 75 Cal.App.4th 1180, 1185–1190 [89 Cal.Rptr.2d 768]; *Davila v. County of Los Angeles* (1996) 50 Cal.App.4th 137, 140 [57 Cal.Rptr.2d 651]; *Scott v. County of Los Angeles* (1994) 27 Cal.App.4th 125, 141 [32 Cal.Rptr.2d 643].) Plaintiff does not claim failure to invest, but rather imprudent investment acts. (*Ortega, supra*, 161 Cal.App.4th 713, 732.) The claim demands inquiry into highly subjective and speculative investment decisions. The prudent investor standards set forth in sections 27000.3 and 53600.3 fall squarely within the scope of enactments that set forth the general policy goals—acting with the care, skill, prudence, and diligence under the prevailing circumstances in the investment or management of funds deposited with the county treasury—but do not specifically direct the manner in which the goals will be performed. (*Lockhart v. County of Los Angeles, supra*, 155 Cal.App.4th 289, 308; *Becerra v. County of Santa Cruz* (1998) 68 Cal.App.4th 1450, 1459–1460 [81 Cal.Rptr.2d 165].) Defendants are immune from liability for violation of the prudent investor standards as alleged in the second and fourth causes of action.

II. *The Vicarious Liability of Defendants for the Acts or Omissions of a Public Employee.*

■ Plaintiff argues that even if defendants enjoy immunity under section 815.6, they "would still be liable for Buffington's acts and omissions under section 815.2, which holds a government entity vicariously liable for the acts and omissions of government employees acting in the course and scope of their employment. (Gov. Code, § 815.2, subsection (a).)" In addition to limited statutory liability for "their own conduct and legal obligations,"

---

"left the selection of necessary and appropriate testing and reporting standards to the sound discretion of the Director, guided by certain 'principles' that the Director should consider in drafting those standards." (*Id.* at p. 632.) Because the guiding principles were "general and broad and . . . subject to considerable interpretation" (*id.* at p. 634), the court concluded the statutory scheme contemplated discretionary decisions by the agency on how best to achieve the stated goals, and the alleged negligent exercise of that discretion would not support a claim for breach of a mandatory duty. (*Id.* at p. 635.)

In *County of Los Angeles v. Superior Court, supra*, 102 Cal.App.4th 627, 641–643, the complaint alleged causes of action against the county for negligence and violation of mandatory statutory duties (§ 815.6) that required social workers to analyze selection criteria prior to foster placement of a child, adhere to a specified priority directive when selecting foster care placement, monitor a child placed outside the home, " 'and take necessary actions to safeguard the child's growth and development while in placement.' " (*County of Los Angeles v. Superior Court, supra*, at p. 643.) The court concluded that the regulations set forth general policy guides for social workers, but neither specifically direct the manner in which the goals will be achieved nor " 'require a particular result.' " (*Id.* at p. 641.) The goals and factors specified in the statute " 'are left to the judgment of the social worker' " (*ibid.*), the court concluded, and therefore create "no mandatory duties" (*id.* at p. 642).

public entities may incur "liability, based on respondeat superior principles, for the misconduct of their employees that occurred in the scope of their employment." (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1127 [119 Cal.Rptr.2d 709, 45 P.3d 1171].) Section 815.2, subdivision (a), provides: "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee . . . ." (See *Scott v. County of Los Angeles, supra*, 27 Cal.App.4th 125, 140.) " 'Thus, "the general rule is that an employee of a public entity is liable for his torts to the same extent as a private person [citation] and the public entity is vicariously liable for any injury which its employee causes [citation] to the same extent as a private employer [citation]." [Citation.]' [Citation.]" (*Barnhart v. Cabrillo Community College* (1999) 76 Cal.App.4th 818, 822 [90 Cal.Rptr.2d 709].) "This '[v]icarious liability is a primary basis for liability on the part of a public entity, and flows from the responsibility of such an entity for the acts of its employees under the principle of respondeat superior.' [Citation.]" (*San Diego City Firefighters, Local 145 v. Board of Administration etc.* (2012) 206 Cal.App.4th 594, 611 [141 Cal.Rptr.3d 860].)

▓ However, a critical caveat is found in subdivision (b) of section 815.2, which states: " 'Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability.' (§ 815.2, subd. (b); Stats. 1963, ch. 1681, § 1, pp. 3266, 3268.)" (*Jacqueline T. v. Alameda County Child Protective Services* (2007) 155 Cal.App.4th 456, 464–465 [66 Cal.Rptr.3d 157].) A public entity is not liable for any injury caused by the act or omission of the public entity or a public employee unless such liability is imposed by statute (§ 815, subd. (a)); also, any liability imposed upon a public entity by statute is subject to statutory immunity and any defenses that could be asserted by a private individual (§ 815, subd. (b)). (*Richardson-Tunnell v. Schools Ins. Program for Employees* (*SIPE*) (2007) 157 Cal.App.4th 1056, 1061 [69 Cal.Rptr.3d 176].)

▓ Section "820.2 provides that 'a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused.' " (*AE ex rel. Hernandez v. County of Tulare* (9th Cir. 2012) 666 F.3d 631, 639.) Section 820.2 "immunizes a public employee from liability for acts or omissions resulting from the exercise of the discretion vested in the public employee," despite abuse of discretion. (*Scott v. County of Los Angeles, supra*, 27 Cal.App.4th 125, 140.) "The immunity for discretionary acts under section 820.2 'confers immunity only with respect to those "basic policy decisions" which have been committed to coordinate branches of government, and does not immunize government entities from liability for

subsequent ministerial actions taken in the implementation of those basic policy decisions [citation]. This distinction is sometimes characterized as that between the "planning" and the "operational" levels of decision-making [citation].' [Citation.]" (*Ortega, supra,* 161 Cal.App.4th 713, 729–730; see *Barner v. Leeds* (2000) 24 Cal.4th 676, 685 [102 Cal.Rptr.2d 97, 13 P.3d 704]; *Johnson v. State of California* (1968) 69 Cal.2d 782, 793–794 [73 Cal.Rptr. 240, 447 P.2d 352]; *Wheeler v. County of San Bernardino* (1978) 76 Cal.App.3d 841, 848 [143 Cal.Rptr. 295].)

In evaluating the immunity of Buffington, and vicariously the County, under section 820.2, we engage in a fundamentally similar analysis and reach the same result as we did to determine whether the treasurer's acts as an investor were mandatory or discretionary under section 815.6. Buffington was not engaged in ministerial or "operational" level decisions. The discretion he exercised involved crucial investment policy decisions that assessed the risks and advantages of competing investment opportunities. (See *Jacqueline T. v. Alameda County Child Protective Services, supra,* 155 Cal.App.4th 456, 468; *Taylor v. Buff* (1985) 172 Cal.App.3d 384, 390 [218 Cal.Rptr. 249].) His decisions as a public servant investor bear the hallmarks of discretionary activity which should not be the subject of scrutiny and second-guessing by a coordinate branch of government. (*Thompson v. County of Alameda* (1980) 27 Cal.3d 741, 748–749 [167 Cal.Rptr. 70, 614 P.2d 728]; *Johnson v. State of California, supra,* 69 Cal.2d 782, 793; *Becerra v. County of Santa Cruz, supra,* 68 Cal.App.4th 1450, 1463–1464; *Masters v. San Bernardino County Employees Retirement Assn.* (1995) 32 Cal.App.4th 30, 46 [37 Cal.Rptr.2d 860]; *Ronald S., supra,* 16 Cal.App.4th 887, 897.) We therefore conclude that pursuant to section 820.2 both Buffington and the County have immunity from liability for the acts alleged in the second cause of action. (*Ortega, supra,* 161 Cal.App.4th 713, 732.)

III. *The Third and Fourth Causes of Action for Violation of Statutory Maturity Limits and the County's Investment Policy.*

Plaintiffs also complain that defendants are not immune from liability for the acts alleged in the third and fourth causes of action. The third and fourth causes of action are each based on different claimed violations. The third cause of action alleges that defendants "purchased two Lehman notes in violation of the Government Code, which prohibited the County from purchasing corporate debt securities with a remaining maturity of more than five years (Gov. Code, § 53601(k).)" The fourth cause of action seeks to impose liability for Buffington's violation of the County's "Investment Policy," which was approved by the board of supervisors. Plaintiffs argue that section 53601 *requires* compliance" with stated maturity limits, and thus "creates a mandatory duty from which the County is not immune."

## A. *Invited Error and Forfeiture.*

Defendants' sole response is that plaintiffs "waived" or "actively invited the supposed error" by failing to object to the trial court's announced tentative decision to sustain the demurrer "to all causes of action." We examine the issue of forfeiture[8] and invited error in the context of the somewhat confusing record before us, which shows that defendants did not demur to the third and fourth causes of actions on the ground of public entity immunity. Defendants asserted that immunity from liability existed for alleged violations of the prudent investor standard and the implementation of a "higher concentration limit," and challenged the first cause of action for lack of a proper allegation of breach of contract, but did not specifically claim immunity as related to the third and fourth causes of action. The argument presented by defendants in support of the demurrer to the third and fourth causes of action of the first amended complaint—and indeed, to all causes of action—was that plaintiffs failed to timely file a government claim. In their opposition to the demurrer, plaintiffs understandably did not refer to the immunity issue in the specific context of the alleged violations of maturity limits and the Investment Policy.

Two hearings on the demurrer took place. At the first hearing the parties discussed immunity as related to the claim that the County and Buffington failed to comply with the prudent investor standard. At the second hearing the discussion primarily centered on the issue of plaintiffs' compliance with the tort claims filing requirements, but defendants' counsel also specifically argued that the immunity defense "went to all" of the four causes of action. When ruling on the demurrer to the first amended complaint, the court seemed to express agreement, and found, without explanation, that discretionary immunity applied to all four causes of action, including the "maturity limits" cause of action. Counsel for plaintiffs expressed confusion that the trial court seemed to rule in the tentative decision and at the hearing "that there was discretionary immunity for all of the other claims in the Complaint," yet the court also "talked about taking a writ," which was inappropriate if the entire complaint was "thrown out." The court indicated that "no causes of action" remained to be litigated, so an appeal rather than a writ was

---

[8] Strictly speaking, "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.' [Citations.]" (*United States v. Olano* (1993) 507 U.S. 725, 733 [123 L.Ed.2d 508, 113 S.Ct. 1770]; see *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 521–522, fn. 3 [113 Cal.Rptr.3d 327, 235 P.3d 988].) Thus, "forfeiture" is the correct legal term to describe the loss of the right to raise an issue on appeal due to the failure to raise it in the trial court. (*Reid v. Google, Inc., supra,* at p. 521, fn. 3; *In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2 [13 Cal.Rptr.3d 786, 90 P.3d 746]; *People v. Williams* (1999) 21 Cal.4th 335, 340, fn. 1 [87 Cal.Rptr.2d 412, 981 P.2d 42]; *Cowan v. Superior Court* (1996) 14 Cal.4th 367, 371 [58 Cal.Rptr.2d 458, 926 P.2d 438].)

the proper review mechanism. The demurrer was sustained without leave to amend "as to each cause of action" of the first amended complaint, and the action was dismissed with prejudice in its entirety. The ruling explicitly *overruled* defendants' demurrer "based on the claim-presentation requirements," on the ground that defendants "waived deficiencies" in the claim presented by plaintiffs. Judgment was entered in favor of defendants.

On this record we cannot conclude that plaintiffs invited any error with respect to the immunity ruling on the third and fourth causes of action. "The ' "doctrine of invited error" is an "application of the estoppel principle": "Where a party by his conduct induces the commission of error, he is estopped from asserting it as a ground for reversal" on appeal.' [Citation.] The purpose of the doctrine is to 'prevent a party from misleading the trial court and then profiting therefrom in the appellate court.' [Citation.]" (*Saxena v. Goffney* (2008) 159 Cal.App.4th 316, 328–329 [71 Cal.Rptr.3d 469].) As we read the record, plaintiffs did not mislead the court or induce any error. Plaintiffs' counsel merely sought clarification of the court's ruling on the scope and breadth of the immunity finding—that is, whether it applied to defeat all of the causes of action. When the court explained that the second, third and fourth causes of action were all embraced within the immunity finding,[9] plaintiffs' counsel expressed appreciation for the clarification and replied, "Okay." No invited error occurred. (*Quantification Settlement Agreement Cases* (2011) 201 Cal.App.4th 758, 824 [134 Cal.Rptr.3d 274].)

■ As for forfeiture, " ' "[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court. [Citation.] The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected." [Citation.] The critical point for preservation of claims on appeal is that the asserted error must have been brought to the attention of the trial court.' [Citations.] ' "It is unfair to the trial judge and to the adverse party to take advantage of an alleged error on appeal where it could easily have been corrected at trial. [Citations.]" [Citation.]' [Citation.]" (*DiPirro v. Bondo Corp.* (2007) 153 Cal.App.4th 150, 177–178 [62 Cal.Rptr.3d 722].) However, even where a legal argument was not raised in the trial court, we have discretion to consider it when the theory raised for the first time on appeal is a pure question of law applied to undisputed facts. (*Martorana v. Marlin & Saltzman* (2009) 175 Cal.App.4th 685, 699–700 [96 Cal.Rptr.3d 172]; *Rowe v. Exline* (2007) 153 Cal.App.4th 1276, 1287–1288 [63 Cal.Rptr.3d 787].)

While plaintiffs had no reason to focus on the immunity issue as related to the third and fourth causes of action when filing opposition to the demurrer,

---

[9] The demurrer to the first cause of action was sustained for plaintiffs' failure "to plead a cause of action for breach of contract."

once the court indicated in the tentative decision and at the hearing that defendants were immune from all liability alleged in the first amended complaint, plaintiffs were aware of the precise issue and the need to object to the proposed ruling. Had plaintiffs objected, defendants and the trial court would have been given the opportunity to address any error associated with the finding that discretionary acts immunity applied to the third and fourth causes of action. Plaintiffs instead accepted the ruling without challenge or argument that defendants' immunity did not extend to the third and fourth causes of action. Nevertheless, given the belated claim of immunity to the third and fourth causes of action, the uncertainty that attended the argument, and the strictly legal nature of argument before us now on the sufficiency of the undisputed facts set forth in the pleading, we exercise our discretion to evaluate the merits of the immunity issue as related to the third and fourth causes of action.

B. *The Third Cause of Action for Violation of Section 53601.*

 Plaintiffs make the rather perfunctory argument that defendants are not immune from the "mandatory duties" imposed by section 53601 and the Investment Policy. Focusing first on the violation of section 53601, subdivision (k), alleged in the third cause of action, we agree with plaintiffs that the duty specified in the statute to invest in "[m]edium-term notes, defined as all corporate and depository institution debt securities with a maximum remaining maturity of five years or less," is mandatory for purposes of section 815.6.[10] The statutorily commanded act—to invest in securities with maximum maturity limits of five years or less—is specific and does not lend itself to a normative or qualitative debate.

---

[10] In pertinent part section 53601 provides: "This section *shall apply* to a local agency that is a city, a district, or other local agency that does *not pool money in deposits or investments with other local agencies, other than local agencies that have the same governing body.* However, *Section 53635 shall apply to all local agencies that pool money in deposits or investments with other local agencies that have separate governing bodies.* The legislative body of a local agency having moneys in a sinking fund or moneys in its treasury not required for the immediate needs of the local agency may invest any portion of the moneys that it deems wise or expedient in those investments set forth below. A local agency purchasing or obtaining any securities prescribed in this section, in a negotiable, bearer, registered, or nonregistered format, shall require delivery of the securities to the local agency, including those purchased for the agency by financial advisers, consultants, or managers using the agency's funds, by book entry, physical delivery, or by third-party custodial agreement. The transfer of securities to the counterparty bank's customer book entry account may be used for book entry delivery.

"For purposes of this section, 'counterparty' means the other party to the transaction. A counterparty bank's trust department or separate safekeeping department may be used for the physical delivery of the security if the security is held in the name of the local agency. Where this section specifies a percentage limitation for a particular category of investment, that percentage is applicable only at the date of purchase. Where this section does not specify a

■ By its terms, however, section 53601 only applies "to a local agency that is a city, a district, or other local agency *that does not pool money in deposits or investments with other local agencies,* other than local agencies that have the same governing body. However, Section 53635 shall apply to all local agencies that pool money in deposits or investments with other local agencies that have separate governing bodies." (*Id.,* subd. (a), italics added.) Section 53635, subdivision (a), in turn, provides in part: *"This section shall apply to a local agency that is a county, a city and county, or other local agency that pools money in deposits or investments with other local agencies, including local agencies that have the same governing body.* However, Section 53601 shall apply to all local agencies that pool money in deposits or investments exclusively with local agencies that have the same governing body." (Italics added.) No provision in section 53635 prohibits investment in securities with maturity limits of greater than five years. In fact, section 53635, subdivision (a), adds: "This section shall be interpreted in a manner that recognizes the distinct characteristics of investment pools and the distinct administrative burdens on managing and investing funds on a pooled basis pursuant to Article 6 (commencing with Section 27130) of Chapter 5 of Division 2 of Title 3." Plaintiffs' third cause of action alleges an investment pool, and fails to allege that the local agencies have the same governing body. On the face of the pleading, the requirements of section 53601, including the maturity limit requirement set forth in subdivision (k), do not apply to create a cause of action for statutory violation.

C. *The Fourth Cause of Action for Violation of the Investment Policy.*

We turn to the fourth cause of action, which alleges that Buffington "violated the Investment Policy" approved by the County's board of supervisors, as "set forth in paragraphs 61 through 63." The allegations of violation of the Investment Policy are thus based on the same failure to "adhere to the prudent investor standard, as described by Government Code sections 27000.3

---

limitation on the term or remaining maturity at the time of the investment, *no investment shall be made in any security, other than a security underlying a repurchase or reverse repurchase agreement or securities lending agreement authorized by this section, that at the time of the investment has a term remaining to maturity in excess of five years,* unless the legislative body has granted express authority to make that investment either specifically or as a part of an investment program approved by the legislative body no less than three months prior to the investment . . . ." (Italics added.)

Section 53601, subdivision (k) authorizes investment in: "Medium-term notes, defined as all corporate and depository institution *debt securities with a maximum remaining maturity of five years or less,* issued by corporations organized and operating within the United States or by depository institutions licensed by the United States or any state and operating within the United States. Notes eligible for investment under this subdivision shall be rated 'A' or better by an NRSRO. Purchases of medium-term notes shall not include other instruments authorized by this section and may not exceed 30 percent of the agency's moneys that may be invested pursuant to this section." (Italics added.)

and 53600.3." Those duties are discretionary within the meaning of sections 815.6 and 820.2. Therefore, public entity immunity attaches, and the fourth cause of action was properly dismissed.

## IV. The First Cause of Action for Breach of Contract.

Plaintiffs' final contention is that the first cause of action of the complaint "properly pled a breach of contract," which, according to settled law, is not defeated by any statutory immunity.[11] The essential inquiry, then, is whether a cause of action for breach of contract has been properly stated by plaintiffs.

Plaintiffs alleged in the first cause of action that the parties "entered into a contract, implied by the conduct of the parties." The alleged terms of the contract are enumerated in the pleading: plaintiffs transferred money into the Pool; defendants agreed to manage the Pool and make investment decisions in compliance "with California law and its own investment policies," as periodically amended, including the "prudent investor standard" mandated by the Government Code; in consideration, plaintiffs paid the County fees charged for management of the Pool. The allegations of breach of the contract essentially parrot the claims of statutory violations: lack of compliance with "California law that governed investments by the Pool," particularly the prudent investor standard; excessive investment of the Pool's funds in Lehman and other companies in the financial sector; failure to recognize the impending collapse of Lehman's stock, and violations of statutory maturity limits in the purchase of Lehman notes.

We recognize "that a county may be bound by an implied contract under California law if there is no legislative prohibition against such arrangements, such as a statute or ordinance." (*Retired Employees Assn. of Orange County, Inc. v. County of Orange* (2011) 52 Cal.4th 1171, 1176 [134 Cal.Rptr.3d 779, 266 P.3d 287]; see *Youngman v. Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 246 [74 Cal.Rptr. 398, 449 P.2d 462].) A "contract implied in fact 'consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words.' [Citation.]" (*Retired Employees Assn., supra,* at p. 1178.) The essential elements of a claim of breach of contract, whether express or implied, are the contract, the plaintiff's performance or excuse for nonperformance, the defendant's breach, and the resulting damages to the plaintiff. (*Reichert v. General Ins. Co.* (1968) 68 Cal.2d 822, 830 [69 Cal.Rptr. 321,

---

[11] When a public entity " 'makes a contract with an individual it is liable for a breach of its agreement in like manner as an individual, and the doctrine of governmental immunity does not apply.' [Citation.]" (*Los Angeles Unified School Dist. v. Great American Ins. Co.* (2010) 49 Cal.4th 739, 748 [112 Cal.Rptr.3d 230, 234 P.3d 490], quoting from *Souza & McCue Constr. Co. v. Superior Court* (1962) 57 Cal.2d 508, 510 [20 Cal.Rptr. 634, 370 P.2d 338].)

442 P.2d 377]; *Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga* (2009) 175 Cal.App.4th 1306, 1332 [96 Cal.Rptr.3d 813]; *Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1178 [80 Cal.Rptr.3d 6].)

The flaw in plaintiffs' contract action is the lack of any proper allegation of breach of the contract. Under a contract theory plaintiffs must establish that defendants' breach of its obligation proximately caused harm. (*Cooper v. State Farm Mutual Automobile Ins. Co.* (2009) 177 Cal.App.4th 876, 896 [99 Cal.Rptr.3d 870].) Plaintiffs have not alleged that defendants failed to perform investment duties. Defendants invested the money plaintiffs contributed to the Pool, as called for by the alleged implied agreement. The gravamen of plaintiffs' claim is the failure of defendants to manage the Pool competently, in accordance with investment policies and statutory requirements, not breach of any separate or additional contractual obligations. The first cause of action asserts a relationship created, defined, and entirely governed by existing independent legal duties. No other duties established by an agreement between the parties have been alleged.

In any event, the County was not authorized to alter its statutory obligations or governmental functions, even by contract. (*Avco Community Developers, Inc. v. South Coast Regional Com.* (1976) 17 Cal.3d 785, 800 [132 Cal.Rptr. 386, 553 P.2d 546]; *Richeson v. Helal* (2007) 158 Cal.App.4th 268, 280–281 [70 Cal.Rptr.3d 18]; *Cotta v. City and County of San Francisco* (2007) 157 Cal.App.4th 1550, 1561–1562 [69 Cal.Rptr.3d 612]; *City of Burbank v. Burbank-Glendale-Pasadena Airport Authority* (1999) 72 Cal.App.4th 366, 376–377 [85 Cal.Rptr.2d 28]; *County Mobilehome Positive Action Com., Inc. v. County of San Diego* (1998) 62 Cal.App.4th 727, 736 [73 Cal.Rptr.2d 409].) Moreover, the County's statutory obligations cannot serve as the consideration for a contract or promise. (*Mission Oaks Ranch, Ltd. v. County of Santa Barbara* (1998) 65 Cal.App.4th 713, 723–724 [77 Cal.Rptr.2d 1]; *Delucchi v. County of Santa Cruz* (1986) 179 Cal.App.3d 814, 823 [225 Cal.Rptr. 43].) We conclude that plaintiffs have not alleged formation or breach of a contract. (*Cotta v. City and County of San Francisco, supra*, at p. 1561.)

Finally, we must look to the essential nature of a claim when evaluating governmental immunity. (*Roe v. State of California* (2001) 94 Cal.App.4th 64, 69 [113 Cal.Rptr.2d 900]; *Janis v. California State Lottery Com.* (1998) 68 Cal.App.4th 824, 830 [80 Cal.Rptr.2d 549].) Here, the nature of the right sued upon in the first cause of action is not for breach of a promise, but rather for acts or omissions that constitute violations of independent noncontractual duties. (See *Khodayari v. Mashburn* (2011) 200 Cal.App.4th 1184, 1190 [132 Cal.Rptr.3d 903].) And, as we have concluded,

defendants are immune from liability for those claims. Demurrer to the first cause of action for breach of contract was properly sustained.

## V. *Sustaining the Demurrer Without Leave to Amend.*

We further conclude that the trial court did not err by sustaining the demurrer without leave to amend. We review the decision to deny leave to amend under the abuse of discretion standard. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].) In doing so, we decide whether there is a reasonable possibility that the defect can be cured by amendment. (*Whittemore v. Owens Healthcare-Retail Pharmacy, Inc.* (2010) 185 Cal.App.4th 1194, 1199 [111 Cal.Rptr.3d 227].) "The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) "As a general rule, if there is a reasonable possibility the defect in the complaint could be cured by amendment, it is an abuse of discretion to sustain a demurrer without leave to amend." (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 459 [80 Cal.Rptr.2d 329]; see, e.g., *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 810 [27 Cal.Rptr.3d 661, 110 P.3d 914]; *Quelimane Co. v. Stewart Title Guaranty Co., supra,* 19 Cal.4th 26, 39.) "Nevertheless, where the nature of the plaintiff's claim is clear, and under substantive law no liability exists, a court should deny leave to amend because no amendment could change the result." (*City of Atascadero, supra,* at p. 459.)

We conclude that there is no reasonable possibility the defects in the first amended complaint may be cured by yet another amendment of plaintiffs' pleading. Plaintiffs were granted ample opportunity to cure the defects in the pleading, but failed to do so. The first amended complaint is unsuccessful not because the pleading is inartful, but because neither the properly asserted facts nor the remaining conclusory allegations adequately state causes of action that are not defeated by immunity defenses. (*Schauer v. Mandarin Gems of Cal., Inc.* (2005) 125 Cal.App.4th 949, 961 [23 Cal.Rptr.3d 233].) Therefore, the trial court did not abuse its discretion by sustaining defendants' demurrer without leave to amend, and dismissing the action. (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 274–275 [129 Cal.Rptr.3d 467]; *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1158–1159 [121 Cal.Rptr.3d 819]; *Soifer v. Chicago Title Co.* (2010) 187 Cal.App.4th 365, 374 [114 Cal.Rptr.3d 1].)[12]

---

[12] In light of our conclusions we need not address defendants' contention that the "action is time-barred" due to plaintiffs' failure to timely file a government claim.

## DISPOSITION

Accordingly, the judgment is affirmed.

Marchiano, P. J., and Margulies, J., concurred.

Appellants' petition for review by the Supreme Court was denied April 10, 2013, S209136. Werdegar, J., did not participate therein.