Filed 7/22/13  Elster v. Fishman CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JERI ELSTER, | B239651 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC455317) |
| v. | |
| JOEL FISHMAN et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ronald M. Sohigian, Judge.  Reversed with directions.

Cohen & Lord, Bruce M. Cohen and Rae Lamothe for Plaintiff and Appellant.

Lisa R. Jaskol for Women Lawyers Association of Los Angeles and California Women Lawyers as Amici Curiae on behalf of Plaintiff and Appellant.

Finestone & Richter, Eric F. Edmunds, Jr. and D. Jason Davis for Defendants and Respondents.

————————————————

# INTRODUCTION

An attorney sent his secretary multiple rounds of offensive emails. Some were pornographic; some contained vulgar and sexually explicit language. After each series of emails the employee promptly complained to the law firm's office manager, but to no avail. The employee's doctor eventually put her on medical leave. The employee subsequently sued the law firm and the attorney for sexual harassment, failure to prevent sexual harassment, retaliation under the California Fair Employment and Housing Act (FEHA; Gov. Code,[1] § 12900 et seq.), and intentional infliction of emotional distress. The trial court entered judgment in favor of the attorney and the law firm after sustaining their demurrers to the employee's causes of action in the second amended complaint for violation of FEHA and their demurrer to the employee's cause of action in the third amended complaint for intentional infliction of emotional distress, both without leave to amend.

The issues in this appeal are whether the employee's allegations stated causes of action for violation of FEHA, and whether the exclusivity provision of the workers' compensation law bars her cause of action for intentional infliction of emotional distress. We answer the first question in the affirmative and answer the second in the negative. Therefore, we reverse the judgment and remand for further proceedings.

---

[1] All further statutory references are to the Government Code unless otherwise noted.

In 1992 plaintiff Jeri Elster was the victim of a violent home invasion rape. She survived and became a productive member of the workforce.

In September 2008 defendant Finestone & Richter APC (F&R) hired Elster as a legal secretary. Attorney Jeffrey Richter, F&R's managing partner, assigned Elster to work with defendant Joel Fishman and another attorney, Jay Stein. Fishman instructed Elster that as part of her daily responsibilities, she had to receive and open "as many as 30 or more emails per day from and for Fishman." Elster had to give "personal attention of some nature (printing, filing, following instructions embedded therein, etc.), so reading each and every email completely, including reviewing attachments, was required by Fishman." Fishman and F&R knew that Elster had been raped.

In 2009 Fishman sent Richter a "sexually explicit email inquiring (purportedly on behalf of a client) as to the size of Richter's penis" (the penis email) and copied Elster. Elster promptly informed Hanna Latinovic, the office manager, about the penis email and asked that such sexually explicit conduct cease. Elster did not receive notification that the law firm had taken any corrective action.

On October 28, 2010 Fishman sent an email containing a pornographic video attachment directly to Elster and others. The video depicted a woman taking off her gym clothes and "engaging in provocative exercises in a gym while completely nude." The email's subject line read "[m]eet my new trainer" and did not give any indication of the attachment's pornographic content (meet my new trainer email). Fishman wrote to Elster and the other recipients: "Do you guys have personal trainers? I think this one might fill

---

[2] We accept as true all material facts properly pleaded in the operative complaint or reasonably inferred therefrom but not contentions, deductions, or conclusions of law. (*Apple Inc. v. Superior Court* (2013) 56 Cal.4th 128, 156; *Alliance for Protection of Auburn Community Environment v. County of Placer* (2013) 215 Cal.App.4th 25, 29; *Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1052; *Lafferty v. Wells Fargo Bank* (2013) 213 Cal.App.4th 545, 564.)

the bill!" Elster received numerous "reply to all" responses. In response to a comment that "[w]e should all have one," Fishman wrote "Yes! Did you guys notice that, in addition to being in great physical condition, she also has large breasts?" In response to this comment, another recipient wrote, "Not really watching baseball game. Well maybe," and Fishman responded, "Yeah, I wasn't paying much attention to her breasts either, because I was more interested in a Purchase and Sale Agreement for a business I am helping a client sell." In response to a comment about "[d]istractions," Fishman wrote "Fuck yes? Tits are tits!"

Elster immediately told the office manager about the meet my new trainer email and again asked that the firm take corrective action. Elster also sent an email to the participants in the "meet my new trainer" video email exchange and asked them to remove her from their "to" and "cc" lists for emails with inappropriate attachments. Richter responded to Elster and apologized "for the intrusion from these emails." Richter, however, did not tell Fishman to stop. Instead, Richter told Elster that he had "asked [Fishman] to discontinue showing you as a cc so you are not copied on reply all, and to either blind cc you (assuming you need to have the email for filing or calendaring) or forwarding to you the initial email." Elster interpreted Richter's email to mean that F&R "condoned Fishman's conduct and that she should expect to continue receiving sexually explicit communications from Fishman, despite her complaints and [F&R's] knowledge of her history as a rape survivor." Elster felt that her efforts to stop the sexual harassment were ineffective, resulting in a feeling of helplessness.

On December 2, 2010 Fishman sent Elster an email with the subject line, "Gift idea," and the message, "Says she knows you!" The email included an advertisement for a Playboy magazine subscription. The advertisement depicted a naked woman with large breasts wearing nothing but a Santa Claus hat (the naked Santa email). Elster promptly complained again to Latinovic and asked for a third time that the firm take corrective action.

In lieu of any corrective action, F&R instructed or allowed Fishman to handle the matter on his own. Fishman called Elster into his office "to say how badly he felt about

4

everything he and his buddies had sent her, especially in light of 'her background.'" Elster "was extremely offended," believed that Fishman's apology was insincere, and understood his "reference to 'her background' to be a transparent reference to her home invasion rape."

The following day Latinovic sent Fishman and Richter an email from Elster's computer stating: "I am sitting at Jeri's desk. She just showed me the below [naked santa] e-mail messages that were sent to her with an extremely inappropriate attachment. Jeri is visibly upset and should not be subject to this. As your administrator, I am advising you that in my opinion, we are seriously subjecting ourselves to a law suit [*sic*]. Jeri has had enough and will not tolerate this much longer. It has gone beyond the 'accidental' stage. [¶] Please make sure that this does not happen again."

On December 6, 2010, after Elster had complained about the penis, meet my new trainer, and naked santa emails and responses, Fishman sent Elster flowers with a note stating, "'I hope this week is uneventful. Best Joel.'" Elster asked the receptionist to put the flowers at the reception desk. When Fishman saw the flowers in the reception area, he went behind Elster's desk and whispered in her ear, "did you donate them to the firm?" Fishman had never before gone behind Elster's desk. Elster experienced "an emotional response to Fishman invading her space."

The week of December 6, 2010 was not uneventful. On December 9 Fishman left a work assignment for Elster in his outbox. Attached to this assignment was a series of emails between Fishman and his wife. The first was a sexually suggestive email from Fishman to his wife asking, "Can I feel you up in the car?" (the can I feel you up email). The second email was his wife's response, "I certainly hope so!!!!!" At the end of a lengthy reply, Fishman told his wife, "You rock (. . . the classroom the kitchen and the bedroom)."

Once again, Elster complained to Latinovic. Latinovic found Elster sobbing in Stein's office and suggested that she take the rest of the day off with pay. Latinovic told Elster that she had done "'all she could and was sorry.'" Elster understood this to mean the sexually explicit conduct would continue because Latinovic was powerless to stop it.

5

Finally, rather than addressing the problem by asking Fishman to stop, Richter proposed that the firm fire Elster's best friend so that Elster could take her job working for Richter. Elster was unwilling to have the firm fire her friend so that Elster could work for Richter, who after all as managing partner of the firm had failed to stop Fishman's conduct. On December 14, 2010 Elster's doctor placed her on medical leave.

On January 26, 2011 Elster filed complaints with the Department of Fair Employment and Housing against Fishman and F&R. That same day, the department issued Elster notices of right to sue.

## PROCEDURAL BACKGROUND

On February 16, 2011 Elster filed this action. She alleged causes of action against Fishman and F&R for (1) sexual harassment in violation of FEHA (§ 12940, subds. (a) & (j)), (2) failure to prevent sexual harassment in violation of FEHA (*id.*, subd. (k)), (3) retaliation in violation of FEHA (*id.*, subd. (h)) and (4) intentional infliction of emotional distress. Fishman and F&R demurred to the third cause of action for retaliation. On April 28, 2011 the trial court sustained Fishman and F&R's demurrer to the retaliation cause of action without leave to amend as to Fishman and with leave to amend as to F&R.[3]

On May 10, 2011 Elster filed her first amended complaint, alleging the same four causes of action but deleting Fishman as a defendant in her retaliation cause of action. Fishman and F&R demurred to the first amended complaint in its entirety. Fishman and F&R argued that "[t]he absence of a hostile work environment as a matter of law, and the absence of any 'adverse employment action' are fatal to all of Plaintiff's claims." As to

---

[3] On our own motion, and to aid in our review, we have augmented the record on appeal to include the trial court's minute orders for April 28, June 24, August 31, November 1, November 29, and December 16, 2011. (See Cal. Rules of Court, rule 8.155(a)(1)(A).)

6

Elster's intentional infliction of emotional distress claim, Fishman and F&R argued that Elster had failed to allege facts showing that their conduct was sufficiently outrageous.

On June 24, 2011 the trial court overruled Fishman and F&R's demurrer to the first amended complaint as to Elster's intentional infliction of emotional distress cause of action. The trial court sustained the demurrer to Elster's FEHA causes of action with leave to amend. The court reasoned that Elster was "trying to allege a legal conclusion to kind of highlight her intended characterization, but it's difficult to do that because the appellate jurisprudence that refers to this concept of claims or conduct being sufficiently severe or pervasive to alter the conditions of the employment and to create an abusive working environment," cannot be alleged in "conclusory terms and successfully resist demurrer for failure to state ultimate facts sufficient to constitute a cause of action." In the trial court's view, the penis, meet my new trainer, naked Santa, and can I feel you up emails and responsive commentary were not actionable because they were not sufficiently severe to establish a hostile work environment and alter the conditions of employment.

On July 20, 2011 Elster filed her second amended complaint, realleging her FEHA and intentional infliction of emotional distress causes of action. Fishman and F&R again demurred but this time challenged only Elster's FEHA causes of action. Fishman and F&R argued that "[t]he absence of a hostile work environment as a matter of law, and the absence of any 'adverse employment action' are fatal to each of [Elster's FEHA] claims." On August 31, 2011 the trial court sustained Fishman and F&R's demurrer to Elster's three FEHA causes of action without leave to amend and gave them until September 12 to file their answer to the one remaining cause of action in the second amended complaint, the fourth for intentional infliction of emotional distress.

On October 7, 2011 Fishman and F&R filed a motion for judgment on the pleadings on Elster's cause of action for intentional infliction of emotional distress. Their sole argument was that the intentional infliction of emotional distress cause of action was

7

barred by the exclusive remedy provision of the workers' compensation law.**4** On November 1, 2011 the trial court agreed and granted Fishman and F&R's motion with leave to amend.

On November 10, 2011 Elster filed her third amended complaint again alleging causes of action for sexual harassment, failure to prevent sexual harassment, retaliation, and intentional infliction of emotional distress. Fishman and F&R demurred to Elster's third amended complaint, arguing that her sole remaining cause of action for intentional infliction of emotional distress was "barred by the exclusive remedy provision of the workers' compensation laws."**5** Fishman and F&R also filed a motion to strike the causes of action for sexual harassment, failure to prevent sexual harassment, and retaliation, on the ground that the trial court on August 31, 2011 had sustained the demurrer to those causes of action in the second amended complaint and had not given Elster leave to amend.

On December 16, 2011 the trial court sustained Fishman and F&R's demurrer to Elster's cause of action for intentional infliction of emotional distress without leave to amend, and granted their motion to strike "because Plaintiff improperly re-alleges the Causes of Action that were disposed by the Court[']s August 31, 2011 adjudication of Defendants['] Demurrer Second Amended Complaint." The court ruled: "It seems manifest on this record that the plaintiff has amended and has stated all of the ultimate facts that she is capable of stating."

On January 3, 2012 the trial court entered judgment in favor of Fishman and F&R and against Elster. Elster appeals.

---

**4**     At the hearing on their demurrer Fishman and F&R disavowed any argument that their behavior was not sufficiently outrageous.

**5**     Fishman and F&R also asked the trial court to take judicial notice of the record in Elster's Workers' Compensation Appeals Board action, *Elster v. Finestone & Richter, APC*, WCAB case No. ADJ7623032.

# DISCUSSION

## A.    *Standard of Review*

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled.  We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 . . . .)  Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law.  (*Ibid.; Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967 . . . .)  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  (*Zelig, supra,* 27 Cal.4th at p. 1126.)  And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse.  (*Ibid.*)"  (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865; see *San Mateo Union High School Dist. v. County of San Mateo* (2013) 213 Cal.App.4th 418, 425-426.)

Typically, when a plaintiff chooses to amend her complaint rather than to appeal the sustaining of a demurrer, she waives the right to appeal any error in sustaining the demurrer following a ruling on any subsequent demurrer.  (*City of Dinuba v. County of Tulare*, *supra*, 41 Cal.4th at p. 870; *Aubry v. Tri-City Hospital Dist., supra*, 2 Cal.4th at p. 966, fn. 2; *County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 312.)  This rule is inapplicable, however, "if the trial court denied the plaintiff[] leave to include those causes of action in an amended complaint."  (*City of Dinuba*, *supra*, at p. 870.)  This exception applies here.

## B.    *FEHA Causes of Action*

### 1.    Elster Stated a Claim for Sexual Harassment

FEHA prohibits sexual harassment in the workplace.  (§ 12940, subd. (j)(1) [it is an unlawful business practice "[f]or an employer . . . because of . . . sex . . . to harass an

9

employee"]; see *Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 277; *Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460-461; cf. *Meritor Sav. Bank, FSB v. Vinson* (1986) 477 U.S. 57, 65 [106 S.Ct. 2399, 91 L.Ed.2d 49].) "Sexual harassment consists of any unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature. [Citation.] It usually arises in two contexts. 'Quid pro quo' harassment conditions an employee's continued enjoyment of job benefits on submission to the harassment. 'Hostile work environment' harassment has the purpose or effect of either interfering with the work performance of an employee, or creating an intimidating workplace. [Citation.]" (*Rieger v. Arnold* (2002) 104 Cal.App.4th 451, 459; see *Miller v. Department of Corrections*, *supra*, 36 Cal.4th at p. 461, citing *Fisher v. San Pedro Peninsula Hosp.* (1989) 214 Cal.App.3d 590, 607-608.)

Elster's sexual harassment claim is based on the existence of a hostile work environment. To state a cause of action for hostile work environment sexual harassment, the plaintiff must allege that (1) she was subjected to unwelcome sexual advances, conduct or comments; (2) the harassment was premised on sex; and (3) the harassment was sufficiently pervasive or severe so as to alter the conditions of employment and create an abusive working environment. (*Kelley v. The Conco Companies* (2011) 196 Cal.App.4th 191, 202-203; *Fisher v. San Pedro Peninsula Hosp.*, *supra*, 214 Cal.App.3d at p. 608.)

"In evaluating hostile work environment claims, California looks to both our own state cases and federal authority under title VII of the Civil Rights Act of 1964. [Citation.] To be actionable, the sexual harassment must be sufficiently severe or pervasive ""to alter the conditions of [the victim's] employment and create an abusive working environment."" [Citation.] 'Whether the sexual conduct complained of is sufficiently pervasive to create a hostile or offensive work environment must be determined from the totality of the circumstances. [Citation.] The plaintiff must prove that the defendant's conduct would have interfered with a reasonable employee's [fn. omitted] work performance and would have seriously affected the psychological well-

10

being of a reasonable employee and that she was actually offended.' [Citation.]" (*Mokler v. County of Orange* (2007) 157 Cal.App.4th 121, 141-142.) There is no requirement, however, "'that the employee endure sexual harassment until his or her psychological well-being is so spent that the employee requires psychiatric assistance.'" (*Id.* at p. 144.)

"'The factors that can be considered in evaluating the totality of the circumstances are: (1) the nature of the unwelcome sexual acts or works (generally, physical touching is more offensive than unwelcome verbal abuse); (2) the frequency of the offensive encounters; (3) the total number of days over which all of the offensive conduct occurs; and (4) the context in which the sexually harassing conduct occurred. [Citation.] [¶] In determining what constitutes "sufficiently pervasive" harassment, the courts have held that acts of harassment cannot be occasional, isolated, sporadic, or trivial, rather the plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature. [Citation.] [¶] "[W]hile an employee need not prove tangible job detriment to establish a sexual harassment claim, the absence of such detriment requires a commensurately higher showing that the sexually harassing conduct was pervasive and destructive of the working environment." [Citation.]' [Citation.] '. . . "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." [Citation.]' [Citation.]" (*Mokler v. County of Orange*, *supra*, 157 Cal.App.4th at p. 142.)

Sexual harassment is actionable under FEHA when there is "a pattern of continuous, pervasive harassment," giving rise to a hostile work environment that is both objectively and subjectively offensive. (*Fisher v. San Pedro Peninsula Hosp.*, *supra*, 214 Cal.App.3d at p. 611; see *Fuentes v. AutoZone, Inc.* (2011) 200 Cal.App.4th 1221, 1226.) "'Therefore, "a plaintiff who subjectively perceives the workplace as hostile or abusive will not prevail . . . if a reasonable person . . . *considering all the circumstances,* would not share the same perception." [Citation.]' [Citation.]" (*Fuentes*, *supra*, at p. 1226.) "Whether an employee was subjected to a hostile work environment is ordinarily [a question] of fact." (*Rehmani v. Superior Court* (2012) 204 Cal.App.4th 945, 959.)

11

The primary issue in this case is whether Elster alleged facts sufficient to establish "a pattern of continuous, pervasive harassment." (*Fisher v. San Pedro Peninsula Hosp.*, *supra*, 214 Cal.App.3d at p. 611.) We conclude that she has.

Elster promptly complained to the office manager after receiving the penis email in 2009, putting F&R and Fishman on notice of the offensive content of the email. Despite this notice, and after a brief respite, Fishman continued sending Elster sexually explicit emails that he and the firm knew were inappropriate.

In October 2010, after Fishman sent her the meet my new trainer email and received the responsive commentary on the "trainer's" breasts, Elster promptly lodged her second complaint with the firm. In response, Richter apologized but essentially stated that the firm would not instruct Fishman to discontinue sending Elster sexually explicit emails. All Richter did was report that he had asked Fishman to list Elster as a bcc rather than a cc. Although this new system would be an improvement, it would not stop the misconduct: the firm was allowing Fishman to email Elster without restricting the content of the emails. In the absence of any direction by Richter to Fishman to stop sending inappropriate non-work related emails to Elster, she reasonably believed that F&R condoned Fishman's conduct or at least would allow it to continue, and reasonably feared that she would continue to receive sexually inappropriate emails from Fishman.

Elster's fears were realized on December 2, 2010 when Fishman sent Elster the naked Santa email. Elster complained to the firm a third time. Fishman apologized to Elster, but proceeded to make matters worse by sending Elster flowers with a note hoping that her week was "uneventful" (a circumstance Fishman controlled) and making a physical advance by going behind Elster's desk for the first time and asking in a whisper whether she had donated the flowers to the firm. A few days later Fishman left Elster the can I feel you up email exchange with his wife attached to a work assignment. Latinovic found Elster crying in Stein's office, suggested that she take the remainder of the day off with pay, and said she was sorry and had done all she could. Elster took this to mean that Latinovic was powerless to stop the harassment. And Richter's proposed solution was

12

not much of one: fire Elster's best friend at the firm so that Elster could work for the man who had refused "to put a stop to Fishman's conduct."

These facts viewed in their totality state a claim for sexual harassment based on a hostile work environment. Fishman's sexually inappropriate emails and attachments were entirely unwelcome by Elster. Indeed, Fishman's emails were particularly unwelcome because Fishman and F&R knew that Elster had been a rape victim. Despite Elster's prompt complaint about the first email (the penis email), Fishman persisted in harassing Elster by sending her the meet my new trainer and the naked Santa emails and by giving her a copy of the can I feel you up email.[6] Despite Elster's further protestations, Fishman proceeded beyond electronic harassment to live, real-time harassment by sending Elster flowers, physically approaching Elster behind her desk, invading her personal space, and whispering in her ear. Moreover, the context in which the sexually harassing conduct occurred supports a hostile work environment claim. Unlike the plaintiff in *Lyle v. Warner Brothers Television Productions*, *supra*, 38 Cal.4th 264, Elster worked in a law firm, not on the set of a television show about young adults and their romantic encounters and adventures. Unlike the plaintiff in *Lyle*, Elster was a legal secretary who was not supposed to and did not expect to receive sexually charged emails from her boss unrelated to her job, not a comedy writer's assistant who was forewarned that as part of her job duties she would be hearing and transcribing jokes and discussions of a sexual nature. And although the total number of days over which Fishman's sexually offensive conduct occurred was not extensive, his conduct increased in frequency in late 2010 and as Elster continued to complain. In any event, the total

---

[6] Fishman and F&R argue that Elster's case is based on only four emails. That is not an accurate characterization of Elster's allegations. Elster alleges four instances of sexual emails, which included many more than four emails. According to the complaint and the exhibits attached to the complaint, Fishman and the other participants in the email chain sent Elster at least 13 separate emails. Discovery may reveal more. In addition, Elster does not have a copy of the penis email, and may not be able to obtain any related emails until she has had a chance to conduct discovery.

number of days over which the harassment occurs is only one factor in evaluating the totality of the circumstances.

Elster's allegations describe a law firm environment that was both subjectively and objectively offensive, hostile, and abusive. (See *Dominguez v. Washington Mutual Bank* (2008) 168 Cal.App.4th 714, 725 [the determination of whether there is a hostile work environment "requires the use of common sense and an appropriate sensitivity to social context to determine whether a reasonable person in the plaintiff's position would have found the conduct severely hostile or abusive"].) The factual issue of whether the conduct of Fishman and F&R was sufficiently severe and pervasive to constitute hostile work environment sexual harassment was for the jury. (*Rehmani v. Superior Court*, *supra*, 204 Cal.App.4th at p. 959; *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 264; see *O'Shea v. Yellow Technology Services, Inc.* (10th Cir. 1999) 185 F.3d 1093, 1098 ["the severity and pervasiveness evaluation . . . is '"quintessentially a question of fact"'"]; *Hoyle v. Freightliner, LLC* (4th Cir. 2011) 650 F.3d 321, 333 [same]; *Betts v. Costco Wholesale Corp.* (6th Cir. 2009) 558 F.3d 461, 468 [same]; *Howard v. Burns Bros., Inc.* (8th Cir. 1998) 149 F.3d 835, 840 ["Once there is evidence of improper conduct and subjective offense, the determination of whether the conduct rose to the level of abuse is largely in the hands of the jury."]; Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2012) ¶ 10:164, p. 10-33 ["[t]he level of severity or pervasiveness required to transform a merely annoying or uncomfortable work environment into an actionable, sexually harassing 'hostile environment' is usually a question of fact, to be determined by looking at *all the circumstances*"].) The trial court should not have resolved the issue on the pleadings and should have overruled the demurrer.

### 2. Elster Stated a Claim for Failure To Prevent Sexual Harassment Against F&R

Under FEHA, it is unlawful "[f]or an employer . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." (§ 12940,

14

subd. (k); see *Northrop Grumman Corp. v. Workers' Comp. Appeals Bd.* (2002) 103 Cal.App.4th 1021, 1035.) To state a claim for failure to prevent discrimination or harassment in the workplace, the employee must allege that she was subjected to discrimination, harassment, or retaliation, that the employer failed to take reasonable steps to prevent the harassment, and that this failure caused injury, damage, loss, or harm to the employee. (See *Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 289; *Lelaind v. City & County of San Francisco* (2008) 576 F.Supp.2d 1079, 1103.)

F&R contends that it cannot be liable for failing to prevent sexual harassment because Elster has not stated a claim for sexual harassment. "An actionable claim under section 12940, subdivision (k) is dependent on a claim of actual discrimination [or harassment]: 'Employers should not be held liable to employees for failure to take necessary steps to prevent such conduct, except where the actions took place and were not prevented.'" (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1021, quoting *Trujillo v. North County Transit Dist.*, *supra*, 63 Cal.App.4th at p. 289; see *Thompson v. City of Monrovia* (2010) 186 Cal.App.4th 860, 880 [because section 12940, subdivision (j)(1), "does not create a stand-alone tort, the employee has no cause of action for a failure to investigate unlawful harassment or retaliation, unless actionable misconduct occurred"].) Because we conclude that Elster stated a cause of action for sexual harassment, however, F&R's contention fails. Moreover, Elster amply detailed F&R's failure to prevent sexual harassment by Fishman in the second amended complaint. Indeed, F&R's response to Fishman's sexual harassment of Elster was not to prevent it, but to allow it to continue and try to contain it by limiting (but not eliminating) the sexually graphic and explicit emails Elster would receive from Fishman.

The result is different, however, for Fishman. A "nonharassing supervisor, who fails to take action to prevent sexual harassment, is not personally liable for sexual harassment under [FEHA], as either an aider and abettor of the harasser or the employer, or as an agent of the employer." (*Fiol v. Doellstedt* (1996) 50 Cal.App.4th 1318, 1322.) Similarly, a supervisor who is the actual harasser cannot be liable for failing to prevent the very sexual harassment in which he or she engages. Rather, a supervisory harasser,

15

such as Fishman, is subject to liability for the sexual harassment. (*Page v. Superior Court* (1995) 31 Cal.App.4th 1206, 1212.) Therefore, Elster has failed to state a cause of action for failure to prevent sexual harassment against Fishman.

### 3. Elster Did Not a State Claim for Retaliation

FEHA also prohibits an employer from retaliating against an employee for opposing incidents of discrimination or sexual harassment in the workplace. (See § 12940, subd. (h) [It is an unlawful employment practice "[f]or any employer . . . or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."]; *Miller v. Department of Corrections*, *supra*, 36 Cal.4th at p. 472; *Sanchez v. Swissport, Inc.* (2013) 213 Cal.App.4th 1331, 1341.) "A violation of this prohibition occurs when the employer takes harmful action against an employee in retaliation for the latter's engaging in protected activity." (*McCaskey v. California State Automobile Assn.* (2010) 189 Cal.App.4th 947, 987.) Objecting in good faith about sexual harassment constitutes protected activity. (See *Joaquin v. City of Los Angeles* (2012) 202 Cal.App.4th 1207, 1220 [reporting sexual harassment is a protected activity under FEHA].)

To establish a prima facie case of retaliation under FEHA, an employee must show that she engaged in a protected activity, her employer subjected her to adverse employment action, and there is a causal link between the protected activity and the employer's action. (*McGrory v. Applied Signal Technology, Inc.* (2013) 212 Cal.App.4th 1510, 1525.) Although Elster adequately pleaded that she engaged in protected activity, noticeably absent from Elster's second amended complaint are any allegations suggesting that F&R subjected her to any adverse employment action after she objected to Fishman's conduct. Elster did not allege that F&R terminated, suspended, or demoted her or that F&R changed her responsibilities after she complained to the firm about the emails. In the absence of factual allegations of adverse employment action by F&R, the trial court correctly sustained the demurrer to Elster's retaliation cause of action. (See

16

*Taylor v. City of Los Angeles Dept. of Water & Power* (2006) 144 Cal.App.4th 1216, 1229, disapproved on another ground in *Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1173-1174.)**7**

The burden of proving there is a reasonable possibility that the defect can be cured by amendment "'is squarely on the plaintiff.'" (*Pfeifer v. Countrywide Home Loans, Inc.* (2012) 211 Cal.App.4th 1250, 1261; accord, *San Mateo Union High School Dist. v. County of San Mateo*, *supra*, 213 Cal.App.4th at p. 426.) Because Elster does not assert that she can cure the defect, the trial court did not abuse its discretion in denying leave to amend her third cause of action for retaliation. (*Pfeifer*, *supra*, at p. 1261.)


C.      *Intentional Infliction of Emotional Distress*

"Workers' compensation provides the exclusive remedy against an employer for an injury sustained by an employee in the course of employment and compensable under the workers' compensation law. [Citations.] This precludes a tort remedy against the employer if the conditions of compensation are present." (*Angelotti v. The Walt Disney Co.* (2011) 192 Cal.App.4th 1394, 1403; see Lab. Code, §§ 3600, 3601.)

"[T]he workers' compensation exclusivity rule applies only if the risks resulting in the injury were encompassed within the 'compensation bargain.' [Citation.] The exclusivity rule is based on the 'presumed "compensation bargain"' in which the employer assumes liability for injury or death arising out of and in the course of employment without regard to fault, and compensation is relatively swift, in exchange for limitations on the amount of liability. [Citation.] The compensation bargain does not encompass conduct that contravenes a fundamental public policy or exceeds the risks

---

**7**      Fishman cannot be personally liable for retaliation under FEHA. (See *Jones v. Lodge at Torrey Pines Partnership*, *supra*, 42 Cal.4th at pp. 1160, 1173 [the employer, but not nonemployer individuals, may be held liable for retaliation under FEHA]; *Haligowski v. Superior Court* (2011) 200 Cal.App.4th 983, 993 ["an individual may not be held personally liable for retaliation under the FEHA"]; *Nazir v. United Airlines, Inc.*, *supra*, 178 Cal.App.4th at p. 287 ["no individual liability for retaliation"].)

17

inherent in the employment relationship.  [Citations.]"  (*Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 366; see *Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1100, overruled on another ground in *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 80, fn. 6; *Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 161.)

"An employer's intentional misconduct in connection with actions that are a normal part of the employment relationship, such as demotions and criticism of work practices, resulting in emotional injury is considered to be encompassed within the compensation bargain, even if the misconduct could be characterized as 'manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance.'  [Citation.] Workers' compensation ordinarily provides the exclusive remedy for such an injury. [Citations.]  Conduct in which an employer steps out of its '"proper role"' as an employer or conduct of '"questionable relationship to the employment,"' however, . . . is not encompassed within the compensation bargain and is not subject to the exclusivity rule. [Citation.]"  (*Singh v. Southland Stone, U.S.A., Inc.*, *supra*, 186 Cal.App.4th at p. 367.) Thus, "[t]he workers' compensation exclusivity rule does not apply to any injury resulting from conduct in violation of a fundamental public policy . . . ."  (*Id.* at p. 368.)

As noted above, FEHA prohibits discrimination and harassment in the workplace because of sex.  (§ 12940, subds. (a), (j); *Lyle v. Warner Brothers Television Productions*, *supra*, 38 Cal.4th at p. 277.)  "These prohibitions represent a fundamental public policy decision regarding 'the need to protect and safeguard the right and opportunity of all persons to seek and hold employment free from discrimination.'  [Citations.]"  (*Lyle*, *supra*, at p. 277.)  Because Elster's intentional infliction of emotional distress claim stems from Fishman's sexual harassment, a risk not reasonably encompassed in the compensation bargain, the workers' compensation exclusivity rule does not bar Elster's intentional infliction of emotional distress claims.  (*Singh v. Southland Stone, U.S.A., Inc.*, *supra*, 186 Cal.App.4th at p. 367; accord, *Gantt v. Sentry Insurance*, *supra*, 1 Cal.4th at p. 1100; *Cole v. Fair Oaks Fire Protection Dist.*, *supra*, 43 Cal.3d at p. 161; see *Murray v. Oceanside Unified School Dist.* (2000) 79 Cal.App.4th 1338, 1363 [emotional distress based on sexual harassment not barred by exclusivity provisions of

18

workers' compensation laws]; *Accardi v. Superior Court* (1993) 17 Cal.App.4th 341, 347 ["[d]iscrimination . . . is *not* a normal incident of employment," and a "claim for damages under [FEHA] [citation] is not preempted by the workers' compensation act"]; *Hart v. National Mortgage & Land Co.* (1987) 189 Cal.App.3d 1420, 1424, 1430 [coworker's alleged acts of making sexually suggestive remarks and gestures and grabbing the plaintiff's genitals were not a normal part of employment relationship].)

## DISPOSITION

The judgment is reversed. The matter is remanded to the trial court with directions (1) to vacate its order sustaining Fishman and F&R's demurrer to the FEHA causes of action in Elster's second amended complaint without leave to amend and to enter a new order sustaining the demurrer to the second cause of action without leave to amend as to Fishman only and otherwise overruling the demurrer, and (2) to vacate its order sustaining Fishman and F&R's demurrer to the intentional infliction of emotional distress cause of action in the third amended complaint without leave to amend and to enter a new order overruling that demurrer. Elster is to recover her costs on appeal.

SEGAL, J.[*]

We concur:

PERLUSS, P. J.                    ZELON, J.

---

[*]      Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19